UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

YANGAROO INC.,

        Plaintiff,

  v.                                                      Case No. 09-C-462

DESTINY MEDIA TECHNOLOGIES INC.,
DESTINY SOFTWARE PRODUCTIONS INC.
and MPE DISTRIBUTION INC.,

        Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

      Plaintiff Yangaroo Inc. ("Yangaroo") is the assignee of United States Patent No. 7,529,712 ("the '712 patent"), which claims "a method and system for the secure distribution of content to authorized persons." (Doc. 1-3 at 2.) More specifically, the '712 patent teaches a method by which a distributor of music, audio, video, or other content can encrypt and transmit such content in digital form to a server from which authorized recipients, such as radio station personnel, can decode and download the content pursuant to the predetermined terms and conditions of the distributor. Yangaroo brought this action against defendants Destiny Media Technologies Inc., Destiny Software Productions, Inc., and MPE Distributing, Inc. (collectively "Destiny"), alleging that Destiny is infringing its patent through its MPE products and services, which enable audio and video content providers to distribute their digital media using the Internet. Destiny seeks summary judgment on the ground that its

allegedly infringing conduct is beyond the territorial reach of United States patent law. For the reasons stated below, Destiny's motion will be granted.

## BACKGROUND

The '712 patent generally relates to a method of securely distributing audio and video content to authorized persons. The patent has a single method or process claim, which reads as follows:

> 1. A method of distributing content to a plurality of recipients over a distributed computer network, each recipient having a recipient terminal connected to the network, comprising the steps of:
>
> (a) storing, in server, a user profile for each recipient, each user profile comprising login information and a unique identifier;
>
> (b) receiving and storing, at the server, a content file, a release condition, a release state, and a distribution list associated with said content file, the receiving step being performed from a provider terminal connected to the network, wherein the distribution list contains unique identifiers of specific authorized recipients of the content file;
>
> (c) receiving a request for access from one of the recipient terminals, the request containing login information;
>
> (d) in response to the request for access; a. comparing the received login information to the stored login information to verify that the request came from one of the recipients, b. based on the comparing step, retrieving the stored unique identifier from the user profile, c. verifying that the distribution list includes said one of said recipients by comparing the retrieved unique identifier to the distribution list; and
>
> (e) providing access to the content file at said one of the recipient terminals based on the release condition and the release state.

('712 patent, col. 7, l. 5 - col. 8, l. 16.)

The specification of the '712 patent states that "[i]n operation, a content provider, such as a record label promotions director, uses the content provider computer system to upload an encrypted digital music single to the remote distribution server." (*Id*. at col. 4, ll. 37-40.) The patent's summary of the invention also notes that "[a] content provider uploads encrypted content to the system and specifies the institutions or individuals to which the content is to be provided and release conditions under which it is to be made available." (*Id*. at col. 1, ll. 63-67.) This has the advantage of avoiding the risk that a record company incurs, for example, shipping a physical product such as a compact disk, which can be delayed, damaged or stolen in transit.

Yangaroo alleges that Destiny is infringing its patent through its MPE products and services which enable audio and video content providers to distribute their digital media using the Internet. Specifically, Yangaroo alleges that Destiny has sold or offered to sell the accused MPE products and/or services to two radio stations in Green Bay, Wisconsin. (Compl. ¶ 8.) It is undisputed that Destiny's customers, i.e., the distributors, include record labels in the United States that upload digital content from the United States to Destiny's servers. (Pl.'s Statement of Proposed Material Facts ¶ 14.)

The parties agreed that Destiny's extraterritoriality non-infringement defense is a discrete issue capable of early resolution under this court's Fast Track Summary Judgment Procedure. The parties therefore agreed to limit discovery to three areas: (1) the geographic location of Destiny's servers relevant to the asserted patent claim; (2) the nature of the result of the processes running on Destiny's servers; and (3) the software Destiny marketed in the United States in order to determine whether that issue would prove dispositive. (Doc. # 21 at

2.) Based on the agreement of the parties, the Court entered a Scheduling Order under which the parties were to make initial disclosures and take discovery on the topic of extraterritoriality, but stayed discovery unrelated to Destiny's extraterritoriality defense. (Doc. # 25 at 1.)

**ANALYSIS**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id*. at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id*. at 322-24. In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a genuine issue of material fact for the case to survive. *Id*. at 247-48.

The parties agree that Destiny's servers are located outside of the United States in Vancouver, Canada and in the United Kingdom. As a result, Yangaroo concedes that there is no infringement under 35 U.S.C. § 271(a). (Pl.'s Br. in Opp'n at 4) Plaintiff further concedes that there is no infringement under 35 U.S.C. § 271(b), (c) and (f). This means that the only remaining infringement claim is one under section 271(g), which speaks to

4

infringement of process patents by importing, offering to sell, selling or using a product made by the patented process. In pertinent part, section 271(g) provides:

> Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent.

35 U.S.C. § 271(g).

Destiny contends that it is entitled to summary judgment on Yangaroo's claim of infringement under section 271(g) because its allegedly infringing process does not make a "product" that is imported into the United States. Instead, Destiny contends, its allegedly infringing process transmits information into the United States. Citing *NTP, Inc. v. Research In Motion, Ltd.*, Destiny notes that the Federal Circuit has held that method patent claims over computer processes are not infringed by computers located outside the United States that perform the claimed process as a service and merely transmit information into the United States. 418 F.3d 1282, 1323 (Fed. Cir. 2005). It thus follows, Destiny argues, that Yangaroo's section 271(g) claim must fail.

Yangaroo, on the other hand, argues that Destiny is not entitled to summary judgment because its Play MPE system does in fact produce a "product" that is imported into the United States in violation of section 271(g). That product, Destiny contends, consists of "the encrypted music tracks, albums, and videos sent to end users in the United States using the Play MPE system ...." (Pl.'s Br. In Opp'n at 6.) Digital creations can qualify as products within the meaning of section 271(g), Yangaroo argues, and for this reason Destiny's motion should be denied.

In *Bayer AG v. Housey Pharm., Inc.*, the Federal Circuit held that the statutory prohibition on the importation or sale of a product "made" by a patented process applies only to "physical products" that are "manufactured," and does not extend to "information" produced by a patented process. 340 F.3d 1367, 1371-72 (Fed. Cir. 2003). *Bayer* involved patents directed to "a method of screening for substances which specifically inhibit or activate a particular protein affecting the cultural or morphological characteristics of the cell expressing the protein." *Id*. at 1369. The patent-holder alleged that Bayer infringed its method patents under section 271(g) by using a process to identify which drug to produce. The court considered whether the research data resulting from the performance of a method to identify substances was "a product which is made by a process." *Id*. at 1370. The Federal Circuit answered in the negative, reasoning that because section 271(g) appeared directed toward "tangible objects and not intangibles such as information," the production of information did not fall with the scope of the processes of "manufacture" discussed in the statute. *Id*. at 1372.

Destiny relies primarily upon *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005), in which NTP, Inc. ("NTP") alleged that Research in Motion, Ltd.'s ("RIM") BlackBerry™ system infringed NTP's patents for a method of enabling mobile users to receive e-mail over a wireless network. Under NTP's theory, there was infringement under section 271(g) because the accused method resulted in "email packets" which were sent from RIM's Canadian servers into the United States. Citing *Bayer*, the *NTP* court held that section 271(g) did not apply "[b]ecause the 'transmission of information,' like the 'production of information,' does not entail the manufacturing of a physical product . . . ." 418 F.3d at 1323.

6

Notwithstanding *Bayer* and *NTP*, Yangaroo notes that other courts have found that digital creations can constitute products within the meaning of section 271(g). For example, *CNET Networks, Inc. v. Etilize, Inc.,* concerned a patent that claimed methods and systems for automatically creating an electronic catalog of product information gathered from various internet websites. 528 F. Supp. 2d 985 (N.D. Cal. 2007). The defendant was alleged to have infringed the plaintiff's patent under section 271(g) by importing into the United States catalogues produced with the patented process. The defendant sought summary judgment on the ground that the digital catalogue was not a product within the meaning of section 271(g). The district court rejected the defendant's argument that under *Bayer* and *NTP* there could be no section 271(g) liability and denied the defendant's motion. The infringing method in that case, the court held, was used to create a product, i.e., the catalogue, which was then imported into the United States. In *Bayer* and *NTP*, in contrast, the allegedly infringing process performed a service that consisted of transmitting information to recipients in the United States. Likewise, in *Ormco Corp. v. Align Technology, Inc.*, 609 F. Supp. 2d 1057 (C.D. Cal. 2009), the district court denied the defendant's motion for summary judgment of non-infringement based on section 271(g), concluding that a three dimensional digital representation of teeth transmitted to recipients in the United States was a "'creation' produced by 'practicing each step' of a patented process." 609 F. Supp. 2d at 1076 (footnote omitted). Based upon these decisions, Yangaroo argues that Destiny's motion for summary judgment should be denied. The encrypted music distributed by Destiny's Play MPE system, no less than the digital catalogue in *CNET* or the digital representation of teeth in *Ormco*, constitutes a product within the meaning of section 271(g), according to Yangaroo. Thus, Yangaroo

7

argues, the transmission of such content to recipients in the United States is sufficient to subject Destiny to infringement liability under section 271(g).

Unlike the patents at issue in *CNET* and *Ormco*, however, the '712 patent does not claim a method of creating or manufacturing the digital content that is received in servers and then transmitted to authorized recipients. What is claimed in the '712 patent is "a method of distributing content" that already exists. The '712 patent claims no method or process for the creation of the content that Yangaroo argues constitutes the product that is essential to establish infringement under section 271(g). It therefore follows that Yangaroo's infringement claim must fail.

Yangaroo attempts to avoid this result by suggesting that the encryption of the pre-existing content transforms it into a product made by Destiny's infringing process. Yangaroo notes that Destiny's Rule 30(b)(6) witness, Steven Vestergaard, testified that Destiny's servers located outside the United States encrypt the data file before sending it to the authorized recipients, and argues that such encryption changes the constitution of the data file. While it is true that the content providers, such as music distributors, encode the digital content they upload to Destiny's servers, Yangaroo argues that because the data leaves the servers in a different arrangement of electrons when it is distributed, the Play MBE system in effect manufactures a new product. But even assuming encrypting an existing data file amounts to manufacturing a product, the '712 patent does not claim such a process. The sole claim is a method of distribution. Accordingly, Yangaroo's claim must fail.

**CONCLUSION**

Based on the above, the Court concludes that the claimed method of the '712 patent does not embrace a method of manufacturing the content prior to distributing it. It necessarily follows that Destiny is entitled to summary judgment of non-infringement on Yangaroo's claim under 35 U.S.C. § 271(g). Destiny pled four different counterclaims for declaratory judgment, but these counterclaims will be dismissed without prejudice as moot. *See Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998) (where summary judgment of non-infringement is granted a district court has the discretion to dismiss as moot counterclaims asserting invalidity and unenforceability of a patent).

**THEREFORE IT IS ORDERED** that Destiny's motion for summary judgment of non-infringement is **GRANTED**.

**IT IS FURTHER ORDERED** that Destiny's counterclaims are **DISMISSED** without prejudice.

The Clerk is directed to enter judgment of dismissal in favor of Destiny and against Yangeroo.

Dated this   7th   day of June, 2010.

                                          s/ William C. Griesbach
                                          William C. Griesbach
                                          United States District Judge